Our next case is Entropic Communications v. Charter Communications and the Electronic Frontier Foundation being a movement, 2024-1896. Mr. Mackey. Good morning, Your Honors. May it please the Court, Aaron Mackey with the Electronic Frontier Foundation. The Electronic Frontier Foundation seeks public access to judicial records showing how Entropic Communications' patents affect technology in millions of cable modems. The public cannot understand why the district court held that Entropic's patents are not essential to this technical standard that is found in these modems, because the court permitted parties to seal much of the briefing and the evidence without a motion. First of all, a standard is a piece of discretion, right? For both the intervention and the unsealing motion. That's correct, Your Honor. High hurdle. So the Fifth Circuit has said with regards to... Just to clarify, to get to your appeal on the denial of your motion to unseal, do we first have to agree with you that we need to overturn the denial of the motion to intervene? I think as a matter of law, you could reach the unsealing issue, even if you found that the court did not abuse its discretion, because the court did resolve both of our requests for relief, the district court did. So I think you could reach that question. But if you... Go ahead. No, I'm sorry. Please go ahead. But if you are not a party, by virtue of the upholding, if we do, the court's decision that you did not have a right to intervene, then there's nobody that's before us as a party. You're merely amicus curiae, and amicus curiae cannot pursue the substance of a claim, right? So what would be the basis for us doing anything other than dismissing the appeal? Well, I think, Your Honor, the substance of the claim that we're seeking is an ancillary issue regarding the sealing, right? And so I think what this Court can do is look at the Fifth Circuit's legal standard for what's required. But it's an ancillary issue, and there would be jurisdiction if it were pursued by a party. But, for example, to take the amicus curiae case, if we, if you had decided to participate here as amicus curiae instead of seeking to intervene, you would not be now arguing that you were entitled to be here arguing before us, correct? That's correct. And so why, if we decide you weren't entitled to intervene, aren't you essentially turned into an amicus? I guess I would agree with Your Honor, but I think in this case we don't really have jurisdiction to address the merits of the sealing issue, do we? Well, I think if that's the case, then this issue of sealing after case closure will escape review from either this Court or the Federal or the Fifth Circuit court of appeals. Unless somebody comes in as either one of the parties or as an amicus, I mean, excuse me, as an intervener and successfully intervenes or establishes that there's a violation of the Rule 24 as to the entitlement to intervene. Right. But I think as to — I.e., if you win on the intervention, then you're perfectly entitled to make the argument on sealing. Correct. So we're just talking about whether, if you lose on intervention, we have any more that we can do. I mean, I think, Your Honor, if this — I would submit that this issue of sealing will never come up to this Court because the model protective order that was used in this case is just for patents, right? So the district court has a model protective order that's just for patents, and it's different than the model protective order for civil litigation. And so the parties rely on the protective order and the same court interpretation of the procedural rule to seal this issue without a motion. Right. And so this issue will not — you said perhaps the parties will bring this up. Well, no. Let's assume that there weren't a time on this issue in this case, and you had come in right smack dab in the middle of all the sealing process, and you had satisfied all the requirements that Judge Gilstrap found not to be present, and you had made a motion to intervene, and he'd either granted it or he denied it, and we decided he abused his discretion. That issue would be — the issue of sealing would be before us, correct?  So you can't say it would never come up. It will come up in an appropriately presented case brought by a person who has either succeeded or can establish a right to intervene, right? Correct. Okay. So I think it overstates it to say the issue will always escape review. Well, okay. Yes. I think the reason we're here, Your Honor, is because this practice of sealing by reliance on this language in the protective order has been used by parties not just in this case, but by parties in patent litigation throughout the Eastern District of Texas. And so the reason why we are here today is because we want to ensure that the parties in these cases follow the Fifth Circuit standard when it comes to what's required before they can seal any information, because there were no motions to seal here. And all that the public has with respect to this issue of standard essential patents is essentially the tip of the iceberg, Judge Gilstrap's adoption of Magistrate Judge Payne's report and order. And we don't even actually have a public version of the docs that slice that issue. We have one public definition of what is — I'm just curious. Is this EFF's first attempt to intervene to unseal records that have been sealed through this practice of equating protective orders with sealing records? No, Your Honor. We've intervened twice in the Eastern District of Texas previously. There, there was language that was being used in the protective order, but it wasn't part of the model language. So it was a similar type of issue where the parties were relying on a protective order that said that the information was confidential, and that's what they were using to justify. So they were moving to seal, but it was on the basis of the protective order. So it was a little bit procedurally different, but I would say in substance it was largely the same. And then we've also intervened in cases in the Northern District. That was before your court twice, actually, in Unilaw versus Apple. Were those intervention motions granted? Yes. Yes. In both Unilaw — Judges. Was that Judge Gilstrap or one of the other judges? That was Judge Alsup in the Northern District, but in the Eastern District, it was Judge Gilstrap. Correct, Your Honor. Okay. One other question, then. Well, go ahead. I just think on the abuse of discretion and the high bar, we acknowledge that it is a high bar, but I think what the Fifth Circuit has defined, particularly on this intervention question, is whether or not the district court made an erroneous statement of the law or an erroneous assessment of the evidence. And as we argue in our brief, we think both are present here, because we think the team finance is very explicit that you can't use the date of secrecy when the party has either moved to seal or when they filed this as the starting point for the timeliness calculation. Again, both in team finance as well as in stalwart, it goes back to the question of when did the intervener know that their interest would no longer be protected. And we would submit that once we learned that the case was closed in December, we began to look into this issue and then realized that so much of the material was under seal. So it's still a few months. Still a few months, no matter what the timing was. And there was a magistrate's report, and that works against the denial being prejudicial to you, because that provided a lot of information. I think, Your Honor, so the Fifth Circuit has been very clear. There's a case called SEC v. Vanderway that says that there's actually a distinction between the public's right to information and the public's right to judicial records. So I think when it comes to the district court's finding that it wasn't prejudicial because we had this substitute of the report and recommendation from Magistrate Judge Payne, that that's in conflict with Fifth Circuit law, which says that these are serving two different purposes. The right to information serves a different purpose than the right to judicial records, which is, again, about the public being able to access and see the decision-making. Because, again, the report and recommendation is sort of the tip of the iceberg, and the public does not get to see the fuller, including, again, basic facts like what does the DOCSIS license say beyond just one particular term. And so, again, just I think on intervention, we have both the misstatement of law when it comes to the Stallworth factors, and then we have an erroneous assessment of the evidence, because there was no evidence put in by either party below that our intervention would be in any way prejudicial, right? So we have the district court's statement without any evidentiary record. On the length of time delay, I'm not sure there was a misstatement of the law because it did appear that Judge Gilstrap said, was looking at the issue through the prism of when you knew that your interests would not be protected by the parties, and he concluded that was clear to him by the end of the briefing on the summary judgment motion in October when you had all of, when you could see that all of the briefing and documents were under seal, and that, in fact, the redacted copies were dramatically redacted. So at that point in time, you could see that nobody was fighting to oppose the redacted versions. So Judge Chen, what I would say is, in fact, we did not know that that had occurred because we were not actually aware of the case in the sense of this issue being litigated under seal until after the case was actually settled and there was a Bloomberg News report about it. So we did not, in fact, actually know. And if we do take that as the standard, what I think actually happens Did you say that? I can't recall if, in your briefing to us, you said it's wrong to look at the timing of the briefing because we did not know about the case until after it was  I think what we said was we did not learn of the case, and our view, right, of the timeliness is when we completed the meet and confer process. But we did not actually know about the sealing. So if you had not learned about the case until three years afterwards, then the clock would not have started to run on time. That's correct, Your Honor. And I think that's because if you actually view timeliness for purposes of public access intervention as the moment of sealing, what that means is that the public actually has to be in every courtroom and watching every docket. But the judge's order in denying your intervention motion said something like the judge believed or presumed that you were following the case and were aware of the case at the time of the briefing, and so therefore you were on notice, at least constructively, because you were tracking the case. I think we were Are you telling us now, today, that what the judge said in his order was factually incorrect? I think what we're saying is that we were generally aware of the case because there had been a previous appeal before this court, and we knew that this issue was coming up, but we didn't actually know that the issue had been resolved, because I think just the timeline, right? So Magistrate Judge Payne issued his report and recommendation at the end of November, and then it was adopted on December 8th. And then the parties filed settlement and a stipulation of dismissal on December 10th. So all of that sort of happened very quickly, and we had not been paying attention to the briefing of what we knew that this issue of the standard essential patent licensing issue was before the district court, and it wasn't until we actually saw the settlement that we wanted to go back and actually understand what happened. But as to your direct question, there's nothing in the record that the court is relying on from anything that EFF provided that says that we had knowledge at the moment that the  EFF was aware of the litigation, though. Right. And was aware that there was this licensed defense. Correct. Okay. Let me ask you a question about an issue that you've raised later in your brief about saying that the district court's process here on sealing was a violation of the local rule. Now, as you, I'm sure, are aware, there's a lot of case law out there that says that district courts may deviate from the specifics of local rules if they find that it is efficient to do so and not prejudicial to a party. And I wonder why you think that the process of, used by Judge Gilstrap, which is used by many, many district court judges, of both allowing parties initially to seal, but then very shortly thereafter, and in this case it was within five days in each instance, filing redacted versions of whatever was sealed and that cut back either greatly or to some extent on the material that ends up being sealed, at which point the judge can make a determination as to those materials that were redacted as to whether they should be protected. Why is that something that we should condemn as violating the local rule as opposed to simply saying that is a very efficient way to proceed that is not inconsistent with the spirit of local rule? I think if that is the case, Your Honor, I think in a lot of those situations that I'm aware of in other district courts, that secondary redacted version is accompanied with, if not before, but is accompanied with a motion to seal or some other justification that actually explains the difference.  I can tell you. I don't know how many patent cases you've tried to verdict, and maybe you've tried in other districts a lot, but I can tell you that in my experience with these cases, there are not motions typically to seal. It's simply the process that's used is you file under seal, because most of the time the lawyers are right down to the wire on filing things. They put sealed on the document, send it in, and then come back when they have breathing room and say, okay, we don't really need to seal anything except the finances here. And so they take out something on page 8, lines 3 through 9. That process is used very broadly. Well, I would say to the extent that process was used here, it did not conform with the Fifth Circuit's legal standard as it comes to what is required before you file things under seal, just in substance. And then I would also disagree. But where has the Fifth Circuit said it's a violation to use this process, the process that Judge Gilstrap used and that many other judges used? Because it says in order for the district court to actually seal materials, right, it must conduct a document-by-document and line-by-line review. Okay. All right. But that can happen after the redaction process, right? Sure, Your Honor. And why does that not conform with at least the spirit of what the Fifth Circuit is saying? If it's done. You say it wasn't done here, and that you may be right. But if it's done, I'm getting at whether you're asking us to say that Judge Gilstrap didn't follow the local rule and he should have required, A, a motion, and then done the review of the sealed materials before the redaction process. And that seems to me to be quite inefficient. So to the extent that that is what the briefing says, I want to clarify, because that's not what we're saying. We're saying you can file the materials under seal and then file a later redacted version. We're just saying that we read the local rule as requiring either a motion to seal or a statement from the Court that the previous, it was previously authorized to seal that document. So what you're saying is the local rule requires that there be a motion to seal, assuming that the documents have not previously been sealed.  Correct. Okay. Well. But, Your Honor, you don't have to agree with us to still reverse. I understand. I just think this is a pretty significant change in the practice, at least in the Eastern District. Well, I think the practice here, right, is the leveraging of a protective order with different standards. That's a different issue. That's a different issue. If Judge Gilstrap is saying all it has to be is in the protective order and then it's automatically sealed and I'm not going to look at it after that, I think you've got a point. But the point that I'm concerned about is the suggestion that if there isn't a prior motion to seal and presumably a ruling on said motion at the outset, then nothing after that can be sealed, rather than using a procedure that is used widely in the Eastern District. I just want to directly address, because I don't think that's the relief that we're asking for from this Court. And we would agree that the materials can be sealed presumptively during the pendency of either a motion to seal or an order from the Court that reflects the same Fifth Circuit legal standards. So we're not saying that that information is different. Even though, in your brief, you say that this is a violation of the local rule.  We agree that it violates the local rule. But I just want to make sure that you're clear, Your Honor, that we're not seeking that sort of, as you said, a sort of broad implication. We just think that what's required here is some sort of process that mimics the Fifth Circuit substantive standard, right, where the Court is actually conducting that review of the proposed redacted and sealed material. Thank you, counsel. Let's hear from the other side, and we'll give you your three minutes of rebuttal back. Thank you. Mr. Reisner. Good morning, Your Honor. Dan Reisner for Charter. Mr. Reisner, before you get started, if I could, just a housekeeping matter. One of the things we do not have in this case is the unsealed, at least to my knowledge, is the unsealed versions of the five pleadings that are at issue in this case. It's pretty hard to make a judgment as to whether there was material that was sealed that shouldn't have been sealed without knowing what it was that was sealed. Can you provide that to us? Sure. I believe that five documents, and they're the ones between September 11th and October 23rd or somewhere in there. Yes.  Thank you. EFF argues in its briefs that Hernandez governs the facts of this case, and we agree with that. The Fifth Circuit in Hernandez held that the district court applied the wrong standard for measuring the starting period for the time for delay. What Hernandez said is that if you apply the correct starting point in that case, the delay was several months. But instead of ruling that that time period was too short for there possibly to be a delay, the Fifth Circuit remanded the case to the district court and said it's up to the district court on remand to exercise its discretion and decide if the motion to intervene was untimely. And in doing so, the Fifth Circuit repeatedly emphasized the importance of the district court's discretion in determining questions of timeliness and, in general, the four factors under Stallworth for determining if a motion to intervene should be permitted. I'm going to quote from the Hernandez decision here. This is the Court of Appeals decision, not the remand decision? Correct. All right. Thank you. We reiterate the court's discretion in ultimately deciding Adler's motion. And again, the court said the decision to grant or deny Adler's motion is firmly in the district court's hands. That's at ADF 4579. Here there's no reason to remand to the district court because Judge Gilstrap applied the correct standard. He recited Hernandez and he made a determination, as your honors have already pointed out, that the time period at which EFF knew or should have known, that's the correct standard, should have known, was October 11th when the briefing, the summary judgment briefing, was complete or at the latest, he said, it would be the date of the report and recommendation in November 29th, 2023. And under either date, EFF's waiting until March of 2024 was untimely. EFF makes arguments in its briefs that, and today at our argument, that, well, we shouldn't start in October or in November. We should consider the whole meet and confer process. And it's not until later that, you know, we understood that the parties would keep these documents under seal. But there's no case that says that that's an appropriate way to measure time. And there's no basis, there's no even argument in EFF's papers to explain why it had any reason to think the parties would change their mind. EFF should have known that the parties filed documents under seal according to the local rules. And unlike Hernandez, where there was dispute between the parties as to what documents should be confidential. And the third party, Adler, could sit on the sidelines and think, well, maybe these documents, you know, won't be under seal. Here there was no indication that any party was going to dispute what was filed under seal. So anyone looking at the record would have known in October when the stuff was filed under seal that it was going to stay under seal. It had no reason to think that that would change through a meet and confer process that would happen. And even that meet and confer process was months later. So there's no explanation for this delay. And there's no basis to send this back to the district court to re-evaluate this record and exercise its discretion differently. If you go back just for a moment to the reference to the material that was under the protective order versus the material that was sealed, you do not argue, I take it, that if something is subject to the protective order, that it can automatically and should automatically be eligible for sealing if it appears in a public filed record, do you? In other words, put it another way, the protective order, getting a protective order for discovery purposes is a more lenient standard than the standard that applies to sealing public materials that are filed, right? That's correct. That's why we went through this. So it isn't really correct to say once it's been in the protective, if it's covered by the protective order, then ipso facto it's covered by, it's legitimate to seal, correct? It's a two-step process. So it's legitimate to file initially under seal. Fine. And then you have to redact as you would plan. Setting aside for a moment whether that complies with the Eastern District rules, but that's the process that was followed here. And if that process is followed correctly, you seal, you redact, and then you discuss or the judge looks at the materials and decides whether the redactions were sufficient or excessive, that's fine. But that's a different process from the process of deciding what goes into a protective order, correct? Yes. And so when Judge Gilstrap, if what Judge Gilstrap has said, and I think his order can be read this way, is that once it was under the protective order, that answers the question of whether it can be sealed permanently. If you read it that way, you would agree with me, would you not, that that's not correct? That's not the practice. I would agree with you that there's a – and I don't know that you could say it comes specifically from the rule or practice in the district. But that – I would agree with you that that's not the practice that we followed. And I don't think that's the practice that's followed. When you file something under seal and then you have five days, you're looking at it to see what can I redact. You're trying to redact as much as possible. Under the protective order, the entire document would be confidential.  But the fact that you choose to redact some or a lot or a little would be subject to the review of the district court. And that the fact that it was in a protective order doesn't answer that question. The district court still has to examine that material to see if the redactions were excessive. Would you agree with that? I would – I would agree that it appears that the Fifth – that the Fifth Circuit is saying that. I'm not – it's unclear what the local rule requires. And it's unclear to me, you know, how you reconcile any apparent tension between the local rule and the Fifth Circuit. As we explained in our brief, the appropriate way to explore that is through a declaratory judgment action that's filed in the district court that challenges the local rule. That's been done in the First Circuit. And that's what should have been done here. Because EFF's real dispute here is with the local rule. We're caught in the middle. We're trying to litigate a case and comply with the local rules. But it's not – we're not in the best position to either challenge a local rule or to explain the, you know, the rationale for the local rule in the first place. That should be a separate proceeding. And the district court would be the party that would respond. Would you, on the question of what effect a ruling in your favor on the intervention question would have on the process – our process here, would you say that if we find that there's no abuse of discretion on the part of Judge Gilstraff in denying the motion to intervene, that this case is over and that we are not free then to address the question of sealing? Or would you say that that simply deals with the intervention issue and the sealing issue is still before us? No, I don't see what the basis would be for the Federal Circuit to address sealing if it determines that intervention was improper. Okay. As to the other factors under the Stallworth test, the second factor, which is prejudice, there's a clear record of prejudice. The dates are in the record. The case settled December 2011, and there was very little activity in the case from that point forward. Obviously, there was no appeal. There were a few administrative undisputed filings, but the district court found, based on this record, that the team, the trial team, would have disbanded and that it would be prejudicial to force resources to be devoted after that point in time to address questions that the parties thought had been resolved months earlier. Is there any case law, Fifth Circuit case law, that concluded that there was prejudice in those cases that's similar to the prejudice you're claiming here? There's no case that addresses this specific type of prejudice, but the court in Hernandez did say that the considerations that it identified for determining whether intervention should be permitted or not is a non-exhaustive list, so there's no reason to limit it, and prejudice to the parties itself is the second Stallworth factor. As to the third Stallworth factor that's prejudice to the would-be intervener, EFF claims that it has no ability to understand the summary judgment ruling. The district court found that that's not true. The EFF's own papers demonstrated that it well understood the ruling. The entire report and recommendation is unredacted. The key language from the license agreement that's the basis of the ruling was included in the summary judgment ruling, and EFF has never explained what it is about the summary judgment record that it can't understand. It wasn't clear to me what Judge Gilstrap was relying on from Judge Payne's order that in his view was enough disclosure of whatever had been redacted such that it somehow lessened the amount of prejudice to EFF. I think what Judge Gilstrap was pointing to is that the summary judgment was a license defense based on a DOCSIS license. That document was filed under seal in the report and recommendation. The key language from that, the definition of licensed patents, was included in the report and recommendation. Can you give us, I know we're going to get the documents, unredacted documents, but can you give us a characterization generally of what are the kinds of things that were marked as sealed in what you filed as redacted versions? And in particular, such as the contracts, the license, fill in the gaps for me so that I at least have kind of a working sense of what I'm going to see when I see those documents. Sure. I'm doing this from memory, but the two categories are the DOCSIS license itself. Yeah. And the second category is because Entropic's argument was you need to do an element by element comparison of the claims to the DOCSIS specification. There were essentially claim charts, infringement charts, so there's technical information about how the Broadcom ships operate and expert reports on those type of issues. That's most of the material that was redacted. None of that is actually necessary to understand the ruling because the ruling is not based on an evaluation of how good are these technical arguments. The dispute between the parties was do you even need to do an element by element analysis and Entropic put in all this infringement evidence to show, oh, there are gaps, there are certain limitations that aren't being met here, and the argument that Charter Advance was that that doesn't matter because essentiality doesn't require that. So you didn't have to get into any of those details, and you can see that from the report and recommendation because none of it's redacted and it doesn't get into those technical details. It's a contract interpretation question. The last stalwart factor is unusual circumstances, and the unusual circumstance that EFF points to is the meet and defer requirement in Eastern District of Texas. And I would submit that there is nothing out of the ordinary of having a meet and defer requirement, and there's no reason why that could explain a four- or five-month delay. When EFF finally said we'd like to meet, we have a motion, it was a matter of about a week before there was an actual meet and defer, and the parties said we're not going to unseal the documents. If EFF had approached you on November 1, I think it's 2023, to do a meet and confer to get you to unseal some of these records, would you agree that the motion to intervene would have been timely after the meet and confer ultimately failed? Yeah, assuming that the meet and confer, that the motion was filed reasonably soon after the meet and confer, yes, I don't think the meet and confer would factor into it. But because they, instead of reaching out to you November 1, they reached out to you January 6, now all of a sudden that's too late? Well, I would say two things, Your Honor. One, on January 6, they didn't reach out to us and say we want to file a motion to intervene. Do you agree? What they said was will you unseal everything? Will you file a motion to seal? That's a different dispute, and we said no. We don't need to meet to discuss that. We comply with the local rule. They then came back, I think it was January 18, and said, well, we may need to make a motion. Can we meet? Then we said, oh, okay. You're trying to do the meet and confer. Then we met, had a call on January 26. So there really wasn't much time that elapsed there at all, and they still waited until March to file their motion to intervene. But none of that should matter because the clock starts running when they should have known these documents were not going to be available to the public and their interests weren't protected, and that was when they were filed under seal originally back on October 11 of 2023. Thank you, Counsel. Mr. Mackey has some rebuttal time, three minutes if you need it. Yes, thank you, Your Honor. So I'd just like to say that today is the first time that the public is hearing about the contents of these documents beyond the version in response to your question, Judge Bryson. That's the first time. But we did not hear from Charter any indication as to whether or not those documents contain trade secrets, confidential business information, whether the names of deponents that are redacted from a table of exhibits, whether the disclosure of their names would harm some particular interest. We have none of that. To be fair, I didn't ask for a justification. I asked for a description. Right. And I think I got a description. You're correct, Your Honor. I just want to really quickly correct a couple of record questions that my colleague said. So we did reach out on the 5th of January, and we requested a meet and confer and asked them to unseal or in the alternative we were explicit that we would move to seal. In response, Charter on behalf of both Charter and Entropic responded and said because of their view of how the local rules that they followed applied, they said, quote, there is no need to meet and confer. So they initially refused our effort to meet and confer. And so then we said, no, we intend to file a motion, as we've said. We narrowed the issue down to the sealed filings around the summary judgment motion, and then we met at the end of January. We set a date for early February in which we asked them to respond. They failed to respond, and then we filed our motion in March. And so I just think that it's important that the Court have that. My colleague mentioned that there was a record of prejudice, but there's actually no record of prejudice. If you go back to Judge Gilstrap's order and it looks at what is the prejudice to the parties, there's no underlying documentation, no evidence was submitted by Charter as to how this would prejudice Charter itself. And the cases in the Fifth Circuit talk about prejudice in the context of an intervener slowing down the disposition of the merits, opening a party up to additional fact discovery or having additional members of the employees have to sit for depositions, upsetting a settlement or the actual disbursement of that settlement. None of those factors are present here, and so there's not even evidence that the trial team had to be reassembled, as the District Court claimed. And so, again, we think that that is... Would you regard reassembly of the trial team if it happened, if it were required as a form of prejudice? I think it's certainly a cognizable cost for Charter, absolutely. But I don't think there actually was a reassembly here. Well, there may be, but I thought I was hearing you before saying that that was not really a cognizable cost, even if it occurred. I'm sorry, Your Honor. I think there's no Fifth Circuit law that says the reassembly of a trial team is prejudicial as to the party, right? It certainly is a cost, but I think from our perspective, that cost should have been borne at the outset. And then, you know, finally, one thing I wanted to say, Your Honor, is as to this whole process and practice of disclosing a redacted version, I think what I would point you to is when you have the full record and compare it, by our estimation, Charter's initial... Excuse me, Entropich's opening motion, summary judgment motion, more than 40% of it was redacted in the public version. And in Charter's response brief, more than 76% of that was redacted. And so, from our view, even if there is... We're not talking about the rule, we're just talking about practice and an effort by the parties to make as much public as possible. That didn't happen here. Thank you, Counsel. We appreciate both arguments. The case is submitted, and that concludes today's arguments.